IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No.: 3:17-CR-00640-MGL-5 |
| | ) |
| v. | ) |
| | ) |
| CHRISTOPHER DAUGHERTY | ) |
| | ) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S
MOTION TO VACATE UNDER TITLE 28, U.S.C. § 2255**

In July 2019, Defendant Christopher Daugherty pled guilty to conspiring to distribute and possess with intent to distribute 100 kilograms or more of marijuana. He now moves the Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 [DE 943]. For the reasons given below, the government respectfully moves the Court to enter judgment in the government's favor and submits this memorandum in support of the government's motion.

**I.      Background and Procedural History**

In July 2017, a grand jury returned an indictment charging defendants JD Smith, Bryon Rye, and Carl Rye for their roles in a marijuana drug trafficking organization. (DE 52.) Following Smith's June 2017 arrest, he cooperated with law enforcement to identify his marijuana supplier, who Smith knew of only as "Christopher Robbins" and "Napa." (Daugherty PSR ¶ 42.)[1]   While agents continued to determine Daugherty's identity, Daugherty had several conversations with Smith's counsel and monitored/recorded telephone calls with Smith. (Daugherty PSR ¶ 47.) In

---

[1] The Court expressly adopted the offense conduct set forth in Daugherty's Presentence Investigation Report as its findings of facts. (DE 847, at 27, 48.)

1

one call, Daugherty advised Smith's attorney that it would be in Daugherty's best interest to have Smith out of prison and agreed to collect drug proceeds in an attempt to secure Smith's release. (Daugherty PSR ¶ 48.) Based on flight records, cellphone data, witness statements, and electronic and physical surveillance, agents determined that Daugherty routinely supplied kilogram-quantities of marijuana to Smith, who—using his airplane—delivered the marijuana to others around the country and transported large sums of cash back to Daugherty. (Daugherty PSR ¶ 14.)

Daugherty was arrested by federal agents on January 17, 2018, at the airport in Raleigh, North Carolina. (Daugherty PSR ¶ 51.) When questioned by law enforcement, Daugherty attempted to mislead law enforcement by advising that he did not have a physical address. (Daugherty PSR ¶ 51.) The same day, however, law enforcement executed a search warrant at Daugherty's residence and seized over $400,000 in cash and over 400 kilograms of marijuana. (Daugherty PSR ¶ 52.) Daugherty retained Lenny Kagan, an out-of-state attorney, to represent him on the pending criminal charges, and attorney Aimee Zmroczek served as local counsel. (DE 281.)

Soon after his arrest, Daugherty entered into a proffer agreement with the government. Agents debriefed Daugherty on February 2 and 15, 2018, March 2, 2018, and April 13 and 26, 2018. (*See* DEA-6 Summarizing Daugherty Interviews, attached as Ex. 1.) Attorney Lenny Kagan attended the first debriefing on February 2, 2018, and the fifth debriefing on April 26, 2018. (Ex. 1, at 1.) During the first debriefing, DEA Special Agent Doug McElwain provided Daugherty and his counsel a copy of the proffer agreement that Daugherty had signed and reminded Daugherty the importance of providing truthful information and that if he violated the terms of the proffer agreement, his information could be used against him. (Ex. 1, at 1-2.) For the second, third, and

fourth debriefings, neither attorney Lenny Kagan nor attorney Aimee Zmroczek was present, but Zmroczek's paralegal attended each of those interviews. (Ex. 1, at 1.)

In June 2018, Daugherty retained attorneys Ryan Beasley and Marion Moses to represent him on the pending federal charges. Daugherty thereafter entered into a plea agreement with the government, wherein he agreed to plead guilty to conspiring to distribute 100 grams or more of marijuana, which was the lesser-included offense of count 1. (DE 540, ¶ 1.) Prior to Daugherty's sentencing hearing, a PSR was prepared. Daugherty's PSR held him accountable for over 1000 kilograms of marijuana and calculated his base offense level as 30. (Daugherty PSR ¶¶ 56, 71.) However, the parties negotiated—as part of the plea agreement—a base offense level of 28, which resulted in an advisory guidelines range of 60 to 71 months' incarceration as opposed to 70 to 87 months of imprisonment recommended by the PSR. (Daugherty PSR ¶ 107, 108.)

Daugherty's attorneys objected to the PSR insofar that it did not recommend application of the safety-valve. The government opposed Daugherty receiving a reduction for the safety valve under U.S.S.G. § 5C1.2 because Daugherty failed to be truthful during his September 2020 safety-valve interview about $409,000 in U.S. currency that was seized from his residence. (DE 738, at 3-5.) The Court heard argument from the parties during Daugherty's sentencing hearing and determined that Daugherty was not entitled to safety valve, noting "given everything, I think the government's position is stronger on this" and that "I think it's very likely that he was not completely truthful about" the $400,00 in seized currency. (DE 847, at 26.) The Court sentenced Daugherty to 60 months' imprisonment. The Court also recommended that Daugherty be designated at either FCI Butner or FCI Miami and allowed him to self-report.

Following the Court's entry of judgment, Daugherty filed a notice of appeal. (DE758.) In January 2022, however, Daugherty voluntarily dismissed his appeal and filed a motion for

compassionate release. (DE Nos. 866, 870.) The Court denied the compassionate release motion on May 5, 2022. (DE 919.) On January 10, 2023, Daugherty filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (DE 943.) Daugherty raises two claims in his § 2255 motion. First, he argues that he was deprived of effective assistance of counsel at a critical stage of the prosecution because his attorney was absent for Daugherty's second, third, and fourth cooperation debriefings. Second, he claims that a Special Assistant United States Attorney, who represented the government after a conflict arose with the United States Attorney's Office for the District of South Carolina's representation of the government for this matter, treated Daugherty arbitrarily and unfairly when electing to oppose application of the safety valve. For the reasons provided below, the government opposes Daugherty's motion and moves the Court to enter judgment in the government's favor.

## II. Discussion

### A. Daugherty's Ineffective Assistance of Counsel Claim Fails.

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir. 2010) (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). The petitioner therefore bears the burden of demonstrating both a deficiency in defense counsel's performance as well as prejudice to the outcome of his proceeding. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994) ("Just as the petitioner carries the burden of proving that counsel's performance was deficient, the petitioner also carries the burden of affirmatively proving that prejudice resulted from counsel's deficient performance.").

Under the first prong of *Strickland*, a reviewing court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

4

466 U.S. at 689; *see also Harrington v. Richter*, 562 U.S. 86, 109 (2011) (holding that courts must not "insist counsel confirm every aspect of the strategic basis for his or her actions" because there is "a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect" (cleaned up)). A court should also not "second guess" defense counsel's performance. *Strickland,* 466 U.S. at 689; *Roach v. Martin,* 757 F.2d 1463, 1476 (4th Cir. 1985). Instead, a court must "address not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

Moreover, counsel's performance must be evaluated considering the circumstances of the representation. *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 2004) (The "reasonableness of a lawyer's trial performance must be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential" (cleaned up)). "[P]erfection is not required," and the test is not "whether the best criminal defense attorneys might have done more." *United States v. Giannone*, 2011 WL 1576198, at *2 (D.S.C. Apr. 26, 2011). Rather, the first prong of *Strickland* "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Under *Strickland*'s second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Therefore, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington*, 562 U.S. at 111 (quoting *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id.*

5

In contrast to the typical *Strickland* analysis, which requires a petitioner to demonstrate prejudice, prejudice is presumed when a defendant is denied counsel at a critical stage of the criminal proceedings. *See United States v. Glover*, 8 F.4th 239, 346 (4th Cir. 2021). Even if Daugherty could demonstrate that a proffer session constitutes a "critical stage," an ineffective-assistance-of-counsel claim would be subject to harmless error analysis, unless the error "affects and contaminates the entire subsequent proceeding" or else creates incurable and irreversible structural defects. *United States v. Owen*, 407 F.3d 222, 226–27 (4th Cir. 2005); *see also Rowsey v. United States*, 71 F. Supp. 3d 585, 606 (E.D. Va. 2014) ("Automatic reversal, akin to *Cronic*, is required only at a critical stage of the criminal process where the denial of counsel affects and contaminates the entire subsequent proceeding" (cleaned up) (citing *Owen*, 407 F.3d at 226)).

In *Wingo v. United States*, 341 F. App'x 132, 134 (6th Cir.2009), the Sixth Circuit held that per se ineffective assistance of counsel was not established when a defendant alleged that his attorney was not present during a debriefing the defendant had with the government pursuant to a proffer letter. The Sixth Circuit observed that counsel was communicating with the defendant by telephone during the first proffer debriefing when the defendant entered into the agreement with the government, and, therefore, defendant was unable to show a total absence of counsel. *Id.* The Sixth Circuit also noted that once the defendant agreed to cooperate with the government, the debriefing ceased to be an adversarial proceeding. *Id.* Thus, there was no "total absence" of counsel giving rise to a presumption of prejudice and the burden was on Wingo to show prejudice.

In *Michener v. United States*, 499 F. App'x 574 (7th Cir. 2012), the Seventh Circuit similarly considered whether an attorney's absence from his client's proffer debriefing amounted to abandonment at a critical stage of the proceedings. There, Michener's attorney was present when Michener read and signed a cooperation guilty plea agreement but failed to attend the first

6

debriefing. *Id.* at 574. The court stated that counsel's absence from the debriefing was "not akin to abandoning a defense strategy or tactic to Michener's detriment." *Id.* at 578. Because Michener was unable to demonstrate that his counsel's absence from the debriefing adversely affected him, the Seventh Circuit held that he was not entitled to § 2255 relief. *Id.*

As in *Wingo* and *Michener*, Daugherty's ineffective-assistance-of-counsel claim premised upon his attorney's absence from Daugherty's proffer debriefings fails because he is unable to show prejudice or that the absence of his attorney adversely affected him. First, Daugherty's attorney (Lenny Kagan) was physically present during the first proffer debriefing at which time Daugherty had signed the proffer agreement and had received express instructions on the importance of providing truthful information and the consequences of violating the agreement. (*See* Ex. 1, at 1). Further, there was no total absence of counsel in Daugherty's second, third, and fourth debriefings because Daugherty's counsel's paralegal was present during the three proffer sessions and could have contacted Daugherty's attorney if he desired. In any event, attorney Lenny Kagan attended Daugherty's fifth debriefing and was able to advise Daugherty to the extent he had any questions about any of the prior meetings or if Daugherty believed anything needed to be corrected.

Daugherty nevertheless claims that his attorney's absences during the debriefings prejudiced him because he did not receive the safety valve at sentencing. In support, he alleges the absences led to a dispute with the government that could not be resolved even with new counsel. That contention, however, is belied by the record. First, the debriefings for which Daugherty's prior counsel was absent took place between February and April 2018. The government provided Daugherty a clear opportunity to clarify any prior false statements or omissions at his nearly three-hour safety-valve interview in September 2020, in which Daugherty's

new counsel were present.  (*See* Transcript of Sentencing Hearing, DE 847, at 9.)  Instead, as detailed in the Government's Sentencing Memorandum, Daugherty continued to advance the incredible claim that over $400,000 in cash stored in plastic jars that was seized (along with 429 kilograms of marijuana) at the house where he and his girlfriend resided was not drug proceeds. (DE 738, at 3–5.)  After hearing the arguments of counsel during the sentencing hearing, the Court agreed with the government, finding that Daugherty was not entitled to the safety valve because he was not being truthful about the origins of the seized cash.  (DE 847, at 26.)  Daugherty offers no support for his contention that his original attorney's absence from the 2018 proffers was a "direct cause" of the government's disagreement with Daugherty and that the dispute could not later be resolved.  (*See* Daugherty § 2255 Motion, at 13-14.)  Instead, the record unambiguously shows that the government provided Daugherty (and his subsequent counsel) a renewed opportunity to be truthful so that he could earn a reduction under the safety-valve provision.  It was Daugherty's lack of truthfulness—not his prior counsel's absence from debriefing—that caused Daugherty not to receive the safety valve.

As in *Wingo* and *Michener*, Daugherty is unable to demonstrate that his attorney's absence from three debriefings either prejudiced or adversely affected the criminal proceedings.  Instead, it was, as the Court found, Daugherty's unwillingness to be completely truthful that resulted in Daugherty not receiving the safety valve.  Accordingly, the Court should enter judgment in favor of the government.

### B. Daugherty's Claim of Prosecutorial Misconduct Fails.

Daugherty next claims that he is entitled to relief because a Special Assistant U.S. Attorney at the U.S. Attorney's Office for the Northern District of Georgia improperly and arbitrarily challenged Daugherty's application for a safety valve reduction. (Daugherty § 2255 Motion, at 14-

16.) Because Daugherty failed to pursue this claim on direct appeal, it is procedurally defaulted, and the Court should enter judgment in the government's favor.

A defendant procedurally defaults on a claim by failing to raise it on direct review. *Bousley*, 523 U.S. at 622. A defendant may raise a procedurally defaulted claim in habeas only if he "can first demonstrate either 'cause' and actual 'prejudice, or that he is 'actually innocent.'" *Id.* Cause for a procedural default "turn[s] on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). To establish cause for procedural default based upon ineffective assistance of counsel, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he experienced prejudice as a result. *Id.* A defendant demonstrates actual innocence by showing "factual innocence, not mere legal insufficiency," *Bousley*, 523 U.S. at 623, by clear and convincing evidence, *Mikalajunas*, 186 F.3d at 493.

Here, Daugherty's plea agreement waived some of his appellate rights, but it specifically preserved his right to appeal claims of prosecutorial misconduct. (DE 540, ¶ 10.) Daugherty, however, failed to assert his prosecutorial misconduct claim on direct appeal. Accordingly, the argument is defaulted. The procedural default should not be excused in this case because Daugherty has failed to allege any facts sufficient to establish cause and actual prejudice, and he does not argue that he is innocent. Although Daugherty contends that his original counsel (Lenny Kagan) provided him with ineffective assistance of counsel by his absence at several debriefings, he has failed to allege that his subsequent trial counsel or appellate counsel were constitutionally ineffective. Accordingly, the Court should enter judgment in favor of the government on Daugherty's claim of prosecutorial misconduct.

Even if the Court were inclined to excuse Daugherty's procedural default, judgment should still be entered in the government's favor. The government acted well within its rights and responsibility to oppose Daugherty's application for a safety valve reduction. *United States v. Aidoo*, 670 F.3d 600, 605 (4th Cir. 2012) ("Under the statute, the government must be given an opportunity to make a recommendation, but the statute requires the district court to independently determine whether the requirements have been met, including whether the defendant was truthful."). Daugherty does not provide any authority or legal principle supporting the existence of any such violation. Instead, the Government's decision to oppose the safety valve application was based on facts and reasoning with which the Court agreed. For example, at Daugherty's sentencing hearing, the Court agreed that the over $400,000 in cash seized from ammunition containers bore "all the hallmarks of drug proceeds" rather than the sale of farm equipment, as Daugherty had previously claimed. (DE 847, at 22.) The Government also cited instances where Daugherty attempted to use the transport and sale of farm equipment as a guise for criminal activity, in addition to his untruthfulness about his telephone conversations with Jessica Plummer and her role in the conspiracy. (DE 847, at 23–24.) Based on these facts, the Court denied Daugherty's safety valve application concluding he "was not completely truthful about" the drug conspiracy. (DE 847 at 26.) Daugherty seeks to rehash his entitlement to the safety valve through the lens of a claim of prosecutorial misconduct or vindictiveness. However, because he has failed to demonstrate that the government acted with any unconstitutional motive, the Court should enter judgment in favor of the government.

**III.    Conclusion**

For the reasons given above, the Court should deny Daugherty's motion to vacate his conviction and sentence and enter judgment in favor of the government.

        Respectfully submitted,

        ADAIR F. BOROUGHS
        UNITED STATES ATTORNEY

        /s/Benjamin N. Garner
        Benjamin N. Garner (Fed. ID # 11477)
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, SC 29201
        Tel. (803) 929-3063
        Fax (803) 254-2912
        Email: Benjamin.Garner@usdoj.gov

May 1, 2023